UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ROBERT HAUSMAN, Personal Representative of the Estate of DERIK HOWARD,<br><br>  Plaintiffs,<br><br>  v.<br><br>DELTA AIR LINES, INC., a Foreign Corporation; and JOHN DOES ONE THROUGH TEN,<br><br>  Defendants. | NO.<br><br>COMPLAINT FOR DAMAGES<br><br>JURY TRIAL DEMANDED |

COMES NOW the Plaintiff, Robert Hausman, Personal Representative of the Estate of Derik Howard, by and through his undersigned attorneys, Krutch Lindell Bingham Jones, P.S., and allege as follows:

## I.   NATURE OF THE ACTION

1.1   This case arises out of the death of Derik Howard on board Delta Flight 1837, headed to Seattle-Tacoma International Airport from San Jose del Cabo International Airport, Mexico, on March 4, 2021 (the "flight" or the "accident flight"). Derik, 53 years old, suffered an overdose of opioid medication while on board the flight, and became unresponsive. Those on board the flight attempted to save his life: the flight crew diverted to Sacramento International Airport, and the

people on board the flight performed CPR. However, the crew did not use a lifesaving opioid antagonist, such as Narcan[1] to reverse the overdose. Whether this is due to Delta failing to stock naloxone in its in-flight medical kit, or Delta failing to properly train its flight attendants to administer naloxone that was stocked, is a fact known only to Delta at the time of the filing of this Complaint.

1.2    Unfortunately, the March 4, 2021 incident was not the first time that those onboard a Delta airlines flight had searched for Narcan, only to come up empty-handed.

1.3    About two years *before* Derik's flight, another man suffered an overdose on board a Delta flight, this time on Flight 2431 from Boston to Los Angeles. Like in Derik's case, the man was found unresponsive. Like in Derik's case, the people on board the flight attempted to resuscitate the man but were unsuccessful. Another passenger on board the flight, Lynne Lyman, witnessed the tragedy unfold. Ms. Lyman happened to be the State Director for the California Drug Policy Alliance. On July 13, 2019, she took to Twitter, sharing her experience of the victim being carried off the flight in a body bag and imploring Delta to "get a #NarcanKit on every [flight]."[2]

1.4    Ms. Lyman's tweet was picked up by the national news, other airlines, such as Alaska Airlines and United Airlines, had already made naloxone available and the Association of Flight Attendants was tired of seeing preventable deaths occur on board aircraft, saying, "Passenger medical emergencies have and will continue to include opioid overdoses. Unfortunately, passengers may die from opioid overdoses on airplanes from the sheer lack of access to naloxone." Sara Nelson,

---

[1] Narcan is a brand-name for naloxone HCI. Plaintiffs use "Narcan" and "naloxone" in this Complaint interchangeably.
[2] https://twitter.com/lynnelyman/status/1150262201749426176

the president of the AFA said, "When we don't have the tools to save someone it's gut wrenching. It's devastating…"[3]

1.5     In response, Delta publicly announced that it would begin carrying naloxone on its aircraft. Michael Thomas, a spokesman for Delta told the news media, "Earlier this year, Delta made the decision to improve our on board medical capabilities by including Narcan to its Enhanced Emergency Medical Kits," Thomas said. "… The process to provision Narcan takes some time and putting it on the aircraft begins this fall."[4]

1.6     Derik's death occurred nearly two years after Delta acknowledged that opioid overdoses are a risk of modern air travel and made a public commitment to carry Narcan on board its flights so that it could be administered by flight crew to passengers experiencing an overdose on board.

## II.     PARTIES

2.1     Plaintiff re-alleges and incorporates by reference all preceding paragraphs in this complaint as if fully set forth herein.

2.2     Plaintiff Robert Hausman is the son of Derik Howard and the Personal Representative of The Estate of Derik Howard.

2.3     At all times material hereto, Derik Howard was a resident of King County, Washington.

2.4     At all times material hereto, Defendant DELTA AIR LINES, INC. (hereinafter "Delta") is and has been a Delaware corporation headquartered at 1030 Delta Blvd., Atlanta, GA 30354.   Delta maintains a registered agent for service with a physical address in Tumwater,

---

[3] https://www.cnn.com/2019/07/17/us/delta-naloxone-trnd/index.html
[4] *Id.*

COMPLAINT FOR DAMAGES - 3

KRUTCH LINDELL BINGHAM JONES, P.S.
3316 Fuhrman Avenue East, Suite 250
Seattle, WA 98102
206-682-1505

Washington. Delta is a legacy air carrier operating regularly scheduled commercial flights under 14 CFR Part 121.

2.5     John Does One through Ten are believed to be agents or employees of the defendant Delta whose names are unknown to the Plaintiff and who were involved in the operations of the aircraft. This Complaint may be amended once the identities of these individuals are ascertained.

### III.     JURISDICTION AND VENUE

3.1     Plaintiff re-alleges and incorporates by reference all preceding paragraphs in this complaint as if fully set forth herein.

3.2     Federal Question jurisdiction is proper under 28 U.S.C. §1331. The subject matter of this claim involves an accident that occurred during international air travel, and Plaintiff's cause of action arises from a treaty agreement, namely Convention for the Unification of Certain Rules Relating to International Carriage by Air, opened for signature on May 18, 1999, reprinted in S. Treaty Doc. 106-45 at 27 (2000) 1999 WL 33292734 (entered into force November 4, 2003) (treaty), commonly referred to as the Montreal Convention (hereinafter "Montreal Convention").

3.3     Diversity jurisdiction is proper under 28 U.S.C. §1332. The parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

3.4     The United States District Court for the District of Washington has jurisdiction over Delta and is a proper venue for this action under Article 33 of the Montreal Convention because the State of Washington is: (1) the "place of destination"; and/or, (2) was and is the principal and permanent place of residency for Mr. Howard and a place from which Delta operates services for the carriage of persons by air from premises leased or owned by the carrier itself or by another carrier with which it has a commercial agreement.

3.5     This Court has personal jurisdiction over Delta, which has sufficient minimum contacts with, and has purposefully availed itself of the benefits of doing business in this State and District—in particular at Seattle-Tacoma International Airport in King County.

## IV.     FACTS

4.1     Plaintiff re-alleges and incorporates by reference all preceding paragraphs in this complaint as if fully set forth herein.

### *Opioid Overdoses and Narcan*

4.2     The term "opioids" includes compounds that are extracted from the poppy seed as well as semisynthetic and synthetic compounds with similar properties that can interact with opioid receptors in the brain. Opioids have analgesic and sedative effects, and are commonly used for the management of pain. Opioid medicines such as methadone and buprenorphine are used for maintenance treatment of opioid dependence. After intake, opioids can cause euphoria, which is one of the main reasons why they are taken for non-medical reasons. Opioids include heroin, morphine, codeine, fentanyl, methadone, tramadol, and other similar substances. Due to their pharmacological effects, they can cause difficulties with breathing, and opioid overdose can lead to death.[5]

4.3     In the United States of America the number of people dying from opioid overdose increased by 120% between 2010 and 2018, and two-thirds of opioid-related overdose deaths in 2018 in the USA involved synthetic opioids, including fentanyl and its analogues. During the COVID-19 pandemic, a further substantial increase in drug overdose deaths was reported in the USA, primarily driven by rapid increases in overdose deaths involving synthetic opioids.[6]

---

[5] https://www.who.int/news-room/fact-sheets/detail/opioid-overdose
[6] *Id.*

4.4     Fentanyl is a potent synthetic opioid that is used as a pain reliever and as an anesthetic. It is approximately 50-100 times more potent than morphine. Fentanyl in various formulations is on the WHO Model List of Essential Medicines. However, fentanyl and its chemically-similar analogues (including carfentanil, acetylfentanyl, butyrfentanyl, and furanyl fentanyl) have been associated with a spike in deaths from opioid overdose. There is evidence that drug dealers may be adding fentanyl to increase the potency of their products (such as heroin) and selling fentanyl as counterfeit tablets, created to look like authentic prescription medications. Therefore, many users who test positive for fentanyl and its analogues do not realize that they took the substance.[7]

4.5     Opioid overdose is life-threatening and requires immediate emergency attention. Recognizing the signs of opioid overdose is essential to saving lives.  Signs of an overdose include:

- The skin is blue – usually the lips and fingertips turn blue first;
- The body is very limp;
- The face is very pale;
- The person makes choking sounds or a gurgling/snoring noise;
- Breathing is very slow, irregular, or has stopped;
- The pulse (heartbeat) is slow, erratic, or not there at all;
- Vomiting occurs; and/or,
- The person loses consciousness.[8]

---

[7] *Id.*
[8] https://www.apa.org/topics/substance-use-abuse-addiction/recognizing-overdose.pdf

COMPLAINT FOR DAMAGES - 6

4.6     Individuals experiencing opioid overdose may be severely bradycardic (slow heartrate) and bradypneic (slow breathing), symptoms which are often misclassified as cardiac arrest. A recent study found that a substantial portion of resuscitated patients with opioid associated out of hospital cardiac arrests arrive at the emergency department alert and neurologically normal within five minutes of initial assessment, suggesting misclassification.[9] "That is, many of these patients may have been severely bradycardic and bradypneic, preventing EMS personnel from sensing a pulse, yet they could be rapidly and fully revived with CPR and naloxone."[10]

4.7     Death following opioid overdose is preventable if the person receives basic life support and the timely administration of the drug naloxone. Naloxone is an antidote to opioids that will reverse the effects of an opioid overdose if administered in time. Naloxone has virtually no effect in people who have not taken opioids.[11]

4.8     Narcan delivers naloxone via a nasal spray. It is available in all 50 states from a pharmacist without an individualized, in-person prescription. Inhalation is not required, and the delivery mechanism requires no assembly or specialized training.[12]

### Overdoses on Flights

4.9     Passengers have had medical emergencies on board aircraft since the beginning of air transportation. Passengers have heart attacks, strokes, and all other sorts of medical emergencies on board. Among these emergencies are overdoses.

---

[9] https://www.ahajournals.org/doi/full/10.1161/CIR.0000000000000958
[10] Id.
[11] https://www.who.int/news-room/fact-sheets/detail/opioid-overdose
[12] https://www.narcan.com/#what-is-narcan

4.10    On February 23, 2018, the Association of Flight Attendants (AFA) wrote to the administrator of the Federal Aviation Administration (FAA) that "Passenger medical emergencies have and will continue to include opioid overdoses. Unfortunately, passengers may die from opioid overdoses on airplanes from the sheer lack of access to naloxone."[13] According to the AFA, the training required would not amount to more than a few minutes.[14] The failure to have naloxone on-board aircraft "renders individuals at a higher risk of death by overdose in the air than on the ground."[15]

4.11    In October of 2018, two paramedics were travelling on board a Delta flight from New Orleans to Atlanta when a medical emergency arose. A passenger was found unresponsive on the aircraft. As one of the paramedics later relayed to the media, "This was not a medical problem that was difficult to manage, except that they didn't have Narcan on the airplane. We had a full ALS kit, and we could have done everything but give Narcan. I mean, we had atropine and epi—just about every drug you can imagine. Just not Narcan." Fortunately, the aircraft landed in time for the passenger to be administered Narcan by paramedics on the ground.[16]

4.12    In response, a Delta spokesman said the airline was aware of the incident and the lack of Narcan on its flight. The spokesperson added that "Delta is planning to include Narcan in its aircraft first-aid kits. In fact, it started adding the drug during the third quarter of 2018 and will increase efforts 'in earnest' before the end of 2018."[17]

4.13    On July 13, 2019,  Delta Flight 2431 (discussed in ¶ 1.3 above) departed from Boston to Los Angeles. A man was found unconscious in the lavatory with a needle still in his arm. After the incident, passenger Lynn Lyman tweeted "get a #NarcanKit on every [flight]".

---

[13] https://www.afacwa.org/afa_calls_on_faa_to_address_opioid
[14] *Id.*
[15] *Id.*
[16] https://www.hmpgloballearningnetwork.com/site/emsworld/article/1221793/narcan-missing-airlines-med-kits
[17] *Id.*

4.14     Delta again promised to do something.  Delta publicly announced that it would begin carrying naloxone on its aircraft (discussed in ¶ 1.5 above). Michael Thomas, a spokesman for Delta told the news media, "Earlier this year, Delta made the decision to improve our on board medical capabilities by including Narcan to its Enhanced Emergency Medical Kits." Thomas further said, "… The process to provision Narcan takes some time and putting it on the aircraft begins this fall."[18]

### Flight 1837 and the Death of Derik Howard

4.15     Prior to March 4, 2021, Derik Howard and Delta entered into a contract for international carriage, as that term is known and defined in Article 1 of the Montreal Convention, providing Derik with roundtrip international travel as part of a round trip itinerary.  The outgoing portion of the itinerary provided for travel by air from Seattle, Washington, United States to Cabo San Lucas, Mexico.  The return portion of the itinerary provided for travel by air from Cabo San Lucas to Seattle, Washington.

4.16     Pursuant to this contract for international carriage, on or about March 4, 2021, Derik was a passenger on Delta Air Lines Flight 1837 from San Jose del Cabo International Airport, Mexico to Seattle-Tacoma International Airport.

4.17     After all passengers on board Flight 1837 were boarded, the flight departed for Seattle.  The scheduled departure time was 4:14 PM (local time) and the aircraft actually departed at 4:26 PM

4.18     At 6:12 PM (local time), Sacramento Airport fire was notified of an emergency on board Flight 1837. Derik had been found unresponsive and slumped over in his chair by flight attendants, and the pilots were making an emergency diversion from Seattle to Sacramento.

4.19     Once the flight attendants found Derik slumped over in his chair, they moved him to the floor and started manual CPR. After approximately 20 minutes of CPR, they delivered one shock with an AED (Automatic External Defibrillator) which was on board the aircraft. The flight

---

[18] https://www.cnn.com/2019/07/17/us/delta-naloxone-trnd/index.html

attendants continued manual CPR for an additional 20 minutes while the aircraft landed at Sacramento International Airport and taxied to Gate A10.

4.20 Paramedics from the Sacramento Airport Fire Department were waiting at the gate when Flight 1837 arrived. Derick was pronounced dead at 6:50 PM.

4.21 Post-mortem toxicology indicated that Derik had died of an overdose of Fentanyl.

4.22 Delta has not provided any information concerning what happened on the flight. However, the medical records available to Plaintiff do not indicate that Narcan was ever used in an attempt to save Derik's life. Accordingly, Plaintiff alleges that Narcan was not administered.

## V. CAUSE OF ACTION

5.1 Plaintiff re-alleges and incorporates by reference all preceding paragraphs in this complaint as if fully set forth herein.

5.2 At the time of this incident, Delta was engaged in international carriage as defined in Article 1 of the Montreal Convention, and the Montreal Convention is therefore applicable to this action, pursuant to that same Article.

5.3 Pursuant to Articles 17 and 21 of the Montreal convention, Delta is strictly liable for damage sustained in the case of bodily injury to a passenger on board the aircraft up to 128,821 Special Drawing Rights. Delta is also liable for damages beyond 128,821 Special Drawing Rights unless Delta proves that (a) such damage was not due to its negligence, wrongful act, or omission of Delta or its servants or agents or (b) such damage was due solely to the negligence or other wrongful act or omission of a third party.

5.4 As a result of Delta's failure to adequately respond to the medical emergency on board its aircraft, Plaintiff suffered wrongful death and survival injuries and damages, as described below:

## VI. DAMAGES

6.1 Plaintiff re-alleges and incorporates by reference all preceding paragraphs in this complaint as if fully set forth herein.

6.2     This action is brought for the wrongful death of Derik Howard, and for the Estate of Derik Howard, and for the losses of all wrongful death beneficiaries pursuant to Washington and/or federal law, including damages for mental and physical emotional distress, anguish, anxiety and loss of Derick's love, care, comfort, society, and companionship and for services and support; and for Derik's general damages including anxiety and fear arising out of the peril to which Derik was subjected, and Derik's awareness of his impending death, along with his mental and physical pain and suffering; and for the destruction of Derik's earning capacity and financial loss to his estate and the beneficiaries; funeral expenses and loss of personal property; and for the losses to his surviving beneficiaries, and all other wrongful death beneficiaries, all pursuant to the Wrongful Death and General and Special Survival Statutes of the State of Washington and any other wrongful death and survival damages available under any other applicable law.

## VII.   JURY DEMAND

7.1     Plaintiff hereby requests a jury trial in this matter.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff having stated his case, prays for judgment against the above-named Defendants, as follows:

A.     For Plaintiff's general damages for physical pain and suffering, mental and emotional distress, anguish, anxiety, fear of impending doom, and for Plaintiff's destruction of earning capacity.

B.     For Plaintiff's special damages in an amount to be proven at the time of trial for all medical expenses past and future, all lost earnings past and future, and all other recoverable special damages as are just arising from the injuries to Plaintiff.

C.     For punitive damages against Defendants sufficient to punish them and to deter further wrongdoing;

D.     For all other general and special damages recoverable under Washington state law,

or any other law deemed applicable by the Court;

    E.    For pre- and post-judgment interest;

    F.    The maximum amount of statutory damages allowed, pursuant to RCW 42.56.550(4);

    G.    For costs, including reasonable attorney's fees, allowed by law; and

    H.    For such other further relief as the Court deems just and equitable.

    I.    For all other general and special damages recoverable under Washington State law, the Montreal convention, or any other applicable law or treaty, or as the Court deems just and equitable.

Dated this 21st day of February, 2023.

KRUTCH LINDELL BINGHAM JONES, P.S.

By: *s/ James T. Anderson*
James T. Anderson, WSBA #40494
Email: jta@krutchlindell.com

By: *s/ J. Nathan Bingham*
J. Nathan Bingham, WSBA #46325
Email: jnb@krutchlindell.com

3316 Fuhrman Ave E, Suite 250
Seattle, Washington 98102
Telephone: (206) 682-1505
Facsimile: (206) 467-1823